STONE, J.
We reverse the denial of Weinstein’s rule 3.800(a) motion to correct an illegal sentence imposed upon his violation of probation.
In 1992, Weinstein was initially sentenced to fifteen years in prison, followed by seven years probation. Following his release from prison on June 6, 1997, he violated probation by committing new offenses.
It was not until after his release from prison that an audit awarded him 645 days of additional provisional gain time. The audit was conducted pursuant to Gomez v. Singletary, 733 So.2d 499 (Fla.1998), cert. denied, 528 U.S. 822, 120 S.Ct. 67, 145 L.Ed.2d 58 (1999) (holding affected inmates are entitled to a retroactive award of provisional release credit). He argues that he should have been awarded this additional gain time nunc pro tunc and, therefore, he should be treated as having been released from prison and placed on probation 645 days earlier, on August 31, 1995. He asserts that, if so, he actually completed his probation before the warrant for violation of probation was filed. Had he received the correct amount of provisional credit, his entire sentence would have expired on August 31, 2002. He was arrested for delivery of cocaine on September 19, 2002.[1]
A trial court has no jurisdiction to revoke probation unless the violation warrant is issued before the probationary term ends. Wilson v. State, 698 So.2d 1380, 1381 (Fla. 4th DCA1997).
The Department of Corrections affida *567 vit[2] states that Weinstein’s records were reviewed pursuant to Gomez on August 19, 2005. He, therefore, was unable to demonstrate that he was entitled to the earlier release until the Department of Corrections informed him of how much credit he was entitled to receive and informed him of the August 31, 1995, release date. The additional 645 days that he served beyond that date were, in fact, ultimately credited to the twenty-seven year sentence imposed upon his violation of probation.
Generally, a prisoner released through time served and provisional credit is placed on provisional release supervision, but if the prisoner, as here, was serving a split sentence of prison followed by probation, then the probation is substituted for the provisional release supervision. § 944.277(5), Fla. Stat. (1990).
In Mayes v. Moore, 827 So.2d 967 (Fla.2002), cert. denied, 539 U.S. 904, 123 S.Ct. 2245, 156 L.Ed.2d 114 (2003), the supreme court recognized, in analogous circumstances, that a recalculation of gain time is awarded nunc pro tunc.
In other words the Department records the gain time as if it had been awarded at the appropriate time in the past. When the Department does this, it refers to the date when the gain time should have been awarded as the “accrued date.” The date on which a data entry employee enters the gain time award into the computer and credits it to the inmate’s “account” or record is called the “posting date.”
Id. at 973. The issue in that case involved the forfeiture of the recalculated gain time. The court reasoned:
However, the “posting date” is not at all the relevant date for our consideration. The conditional release statute specifically provides for forfeiture of all gain time “earned up to the date of release.” Although petitioners’ 800 days of provisional credits were posted in 2000, they were earned in the mid 1990s, on the Department’s “accrued” date. Accordingly, the “accrued date” and not the “posting date” is the relevant date we must consider when determining whether late-awarded gain time may be forfeited. To do otherwise would result in inmates such as these petitioners receiving Gomez credits but not forfeiting them for a conditional release violation, while another inmate who received Gomez credits before being released on conditional release would forfeit the credits for a later violation. Because we find that petitioners’ provisional credits were properly forfeited, they are not entitled to relief on this issue.
Id. at 973-74 (citation omitted).
The reasoning in Mayes, that Gomez credit is awarded nunc pro tunc and treated “as if it had been awarded at the appropriate time in the past,” supports Weinstein’s argument. In this case, if the credit had been properly awarded when it accrued, Weinstein would have completed his probation before the violation of probation warrant was filed.
Certainly, if Weinstein’s probation had not been revoked, and was less than 645 days from expiration, he would have been entitled to an early termination of proba *568 tion following the supreme court’s holding, in Gomez, that affected inmates must be awarded provisional credit retroactively.
We note that Weinstein apparently committed one of the new offenses, in case number 02-15864, on August 8, 2002, which was before his probation would have ended if he had received the proper provisional credit. However, the warrant for the violations did not issue until October 3, 2002. In State v. Hall, 641 So.2d 403, 404 (Fla.1994), the supreme court observed:
It has long been the rule that upon expiration of the probationary period the court is divested of all jurisdiction over the person of the probationer unless in the meantime the processes of the court have been set in motion for revocation or modification of the probation pursuant to Section 948.06, F.S.
Therefore, if the revocation process was not initiated before the probationary term ended, the court lost jurisdiction to revoke probation. See also Howard v. State, 920 So.2d 787 (Fla. 4th DCA 2006); Slingbaum v. State, 751 So.2d 89 (Fla. 2d DCA 1999).
Following Gomez and Mayes, the credit must be treated as though it had been awarded when it should have accrued; therefore, Weinstein would have completed his probation before the revocation of probation proceedings were initiated.
We note that although the warrant for violation of probation was not filed until October, the date it was signed, not the date it was filed, is determinative. Nothing in the record indicates when the warrant was signed. Therefore, we reverse and remand with directions to determine whether the revocation process was set in motion before the probation period ended, and, if not, to vacate, for lack of jurisdiction, the revocation order and the sentence imposed.
GUNTHER and KLEIN, JJ., concur.

. We note that the state asserts that Weinstein was previously unsuccessful in a mandamus petition and suggests that his only remedy is to seek review of that ruling. However, we have reviewed the mandamus and determined that the petition and the motion in this case do not address the same issue.

. Although the state also argues that Wein-stein's claims are not supported by the record, it is undisputed that he is relying on official records from the Department of Corrections and a sworn affidavit from a correctional services administrator. The state does not dispute the accuracy or authenticity of the affidavit. See Wencel v. State, 915 So.2d 1270 (Fla. 4th DCA 2005) (finding in reviewing a 3.800(a) motion, the court can take judicial notice of official actions of an administrative arm of the executive branch).